**FILED**

**March 9, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **D.S.**

**No. 21-0798** (Wyoming County 19-JA-10)

## MEMORANDUM DECISION

Petitioner Mother M.S., by counsel Karen S. Hatfield, appeals the Circuit Court of Wyoming County's September 13, 2021, order terminating her parental rights to D.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Gary L. Michels, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Lindsey Ashley Thompson, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that the DHHR made reasonable efforts to reunify the child with petitioner and in terminating her parental rights without considering a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2019, the DHHR filed a child abuse and neglect petition against petitioner and the father. The DHHR indicated that Child Protective Services ("CPS") had opened a case with the parents in February of 2019, after a domestic violence incident occurred in the home wherein petitioner pushed D.S., then fourteen years old, causing him to fall and hit his arm on a towel rack. A CPS worker spoke with the child, who reported that petitioner abused drugs and stole from people. The child also reported observing methamphetamine in the home and stated that his father had admitted to him that he abused methamphetamine on occasion. The child further described domestic violence incidents between his parents but characterized petitioner as the instigator most of the time.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Following the domestic violence incident wherein petitioner pushed the child against the towel rack, petitioner was arrested and charged with domestic battery, and the father obtained a domestic violence protective order ("DVPO") against petitioner on behalf of the child. Later that month, the child underwent a forensic interview wherein he reported, again, that petitioner abused drugs and stole from people and lied about it. The child further reported that petitioner threw a chair at him after he discovered her methamphetamine in the home and that he had watched her throw pans at his father.

The DHHR alleged that, only a few weeks later, in March of 2019, another domestic violence incident occurred. According to the DHHR, petitioner came to the home in violation of the DVPO and her bond conditions. A verbal altercation occurred between the parents, causing the child to call the police for fear of the situation escalating. A CPS worker spoke to the child, and the child stated that petitioner and the father were arguing and that petitioner "went into a rage" and that he "didn't want to be around this." The worker also spoke to the father, who reported he was going to dismiss the DVPO against petitioner. Given the foregoing, the DHHR alleged that the child was abused and neglected and requested emergency custody of the child. The parents waived their preliminary hearing.

The circuit court held an adjudicatory hearing in June of 2019. Petitioner was incarcerated but was transported to the hearing and represented by counsel.[2] The DHHR advised the circuit court that the father had passed away, and he was dismissed from the proceedings. Petitioner stipulated to the allegations of abuse contained in the petition. Specifically, petitioner stipulated that she abused nonprescribed medications that affected her ability to parent the child. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent.

In April of 2021, the DHHR filed a motion to terminate petitioner's parental rights, wherein it noted that petitioner failed to maintain contact with the DHHR and participate in services. The DHHR indicated that petitioner contacted her CPS worker twice to ask about services but thereafter ceased contact. The DHHR stated that a CPS worker attempted to contact petitioner on at least five occasions, but that petitioner did not respond to her attempts. However, petitioner called her economic services worker at the DHHR to update her contact information and, on a separate date, dropped off an application for economic services at the DHHR office but failed to ask about her child on either occasion. The guardian filed a report with the circuit court, also requesting termination of petitioner's parental rights. The guardian indicated that petitioner had not complied with services and detailed at least one instance of her poor behavior during the proceedings. Specifically, the guardian related that she accompanied the child to petitioner's home so that he could retrieve some personal belongings of his late father. The guardian reported that petitioner had instructed individuals who were clearly under the influence of drugs and/or alcohol to drive by and make threats during this time. The guardian stated that the child consistently had maintained that he wants no contact with petitioner and desired to be adopted by his foster family.

In July of 2021, the circuit court held a dispositional hearing. Petitioner failed to attend but was represented by counsel. A CPS worker testified in support of the DHHR's motion to terminate

---

[2]It is not apparent from the record why petitioner was reincarcerated following her prior release on bond.

petitioner's parental rights. According to the worker, petitioner failed to do anything to improve the conditions of abuse and neglect and essentially abandoned the case. The worker testified that services such as parenting and adult life skills classes and drug screens were set up with petitioner but that she failed to comply, despite a different CPS worker's many attempts to contact her. She further indicated that the child, sixteen years old at the time of the dispositional hearing, did not want a relationship with petitioner. As such, the CPS worker testified that there was no reasonable likelihood that petitioner would change in the near future.

Following testimony, the circuit court found that petitioner "made no effort to make the changes needed to correct the deficiencies that led to [her] involvement with child protective services" and that that she failed to cooperate with the DHHR's reunification efforts. The circuit court further found that petitioner had little or no contact with the child, failed to participate in multidisciplinary team ("MDT") meetings, failed to attend hearings, failed to participate in the case plan, and, ultimately, abandoned the child. Accordingly, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the child's welfare. Petitioner appeals the circuit court's September 13, 2021, dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in finding that the DHHR made reasonable efforts to reunify the child with petitioner. Petitioner contends that as she was never offered an improvement period, "there is an issue with the [circuit c]ourt's findings" regarding alleged reasonable efforts. Although an improvement period was referenced several times in the record, petitioner claims that the circuit court never granted her one. She also denies the CPS worker's testimony at disposition that services were set up for her and claims that she requested, and was denied, services numerous times. Petitioner points out that the family case plan provided in the appendix record on appeal was not created until May of 2021, well over two years into the proceedings, and that it provided no goals for her to meet. Based on the foregoing, petitioner asserts

---

[3]The father is deceased. The permanency plan for the child is adoption by his foster family.

that the circuit court made an erroneous finding that the DHHR made reasonable efforts to reunify the family.

At the outset, we remind petitioner that the denial of an improvement period does not equate to a lack of reasonable efforts. Petitioner is correct that, unless certain conditions not applicable to this appeal exist, the DHHR is required to make "reasonable efforts to preserve and reunify the family." W. Va. Code § 49-4-604(c)(6)(C)(iv). Further, "[i]n determining whether or not parental rights should be terminated, the court shall consider the efforts made by the department to provide remedial and reunification services to the parent." *Id.* at (c)(6)(C). Here, petitioner's allegation that the DHHR failed to make reasonable efforts to preserve the family because she was not granted an improvement period confuses the statutory role of the DHHR in abuse and neglect cases generally. While the DHHR has a duty to make reasonable efforts, "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). Rather, a parent bears the burden of demonstrating that she is likely to fully participate in an improvement period. *See In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). Accordingly, there is no error in finding that reasonable efforts were made despite the fact that no improvement period was granted. To the extent petitioner argues that she should have been granted an improvement period, she cites to no portion of the record demonstrating that she filed a written motion requesting the same or demonstrated that she was fully likely to participate in an improvement period.[4] We, therefore, find that she is entitled to no relief in this regard.

We further find that the circuit court did not err in finding that the DHHR made reasonable efforts to preserve the family below. Petitioner's argument is largely an attack on the CPS worker's testimony at the dispositional hearing, as well as the guardian's report. While petitioner argues that no services were implemented below, she fails to offer any evidence in support of her claims. Indeed, the CPS worker testified that services such as parenting and adult life skills classes and drug screens were initiated for petitioner but that petitioner refused to respond to her CPS worker's attempts of contact and failed to attend MDT meetings. Petitioner did not appear at her dispositional hearing and failed to object or provide any evidence or testimony to rebut the CPS worker's testimony, nor did she object to the guardian's report. The record is clear that while petitioner seems to have contacted the DHHR on two occasions to request services, she ignored any follow-up contact to set up services. Based upon our review of the record, the circuit court's finding that the DHHR made reasonable efforts to preserve the family is not clearly erroneous, and petitioner's self-serving statements to the contrary are simply unsupported.

Petitioner next argues that the circuit court erred in terminating her parental rights rather than employing a less-restrictive dispositional alternative. Essentially, petitioner argues that no

---

[4]There are several references to an improvement period in the appendix record on appeal. However, no orders granting petitioner an improvement period were included in the appendix record, and petitioner contends that no improvement period was offered. The docket sheet was not provided by petitioner in the appendix, despite the requirements of Rule 7(d)(7) of the Rules of Appellate Procedure, thus we are unable to ascertain whether an order was entered granting petitioner an improvement period. If, as petitioner suggests, there was no improvement period granted, we find no error for the reasons set forth above.

services were offered during the proceedings below. As such, petitioner claims this Court "should review this case and consider that a substantial portion of parents whose rights are terminated can be and should be given a more generous opportunity to correct the issues that led to the filing of the [p]etition and ultimately resulted in the termination of parental rights."

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

As set forth above, the unrebutted evidence in the record on appeal is that services such as parenting and adult life skills classes and drug screens were offered to petitioner but that she failed to respond to a CPS worker's attempts at contact and failed to appear at both MDT meetings and the dispositional hearing. Specifically, the record reflects that a CPS worker attempted to contact petitioner on no less than five different dates in an attempt to set up services, but petitioner failed to answer or return her calls. Further, petitioner exhibited questionable behavior during the proceedings such as intentionally having persons under the influence of drugs and/or alcohol harass the child when he was trying to retrieve some of his deceased father's belongings. Petitioner also contacted the DHHR on two different occasions regarding economic services without asking about the child. Moreover, petitioner had little to no contact with the child during the proceedings, and D.S. maintained that he no longer wanted a relationship with petitioner and desired to be adopted by his foster parents. Based on petitioner's inaction during the proceedings, the circuit court found that petitioner essentially abandoned the child. While petitioner argues that she should have been given more time to comply with services to regain custody of the child, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The evidence set forth above supports the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the child's best interests. Thus, termination of her parental rights was not error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 13, 2021, order is hereby affirmed.

5

Affirmed.

**ISSUED**: March 9, 2022


**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment